# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria)

| | |
|---|---|
| JACOB E. ABILT[1] <br> Maryland, United States <br><br>     Plaintiff, <br><br>     v. <br><br> CENTRAL INTELLIGENCE AGENCY <br> Washington, DC 20505 <br><br> <u>Serve</u>:  Eric H. Holder, Jr., <br> Attorney General of the United States, or <br> c/o Designated Representative <br> United States Department of Justice <br> 950 Pennsylvania Avenue, N.W. <br> Washington, DC 20530-0001 <br><br> <u>Serve</u>: Neal McBride, United States <br> Attorney for the Eastern District of Virginia, or <br> c/o Designated Representative <br> United States Attorney's Office <br> 2100 Jamieson Avenue <br> Alexandria, VA 22314 <br><br>     and <br><br> JOHN O. BRENNAN, Director, <br> In his official capacity only <br> U.S. Central Intelligence Agency <br> Office of the Director <br> Washington, DC 20505 <br><br> <u>Serve</u>:  Eric H. Holder, Jr., <br> Attorney General of the United States, or <br> c/o Designated Representative <br> United States Department of Justice <br> 950 Pennsylvania Avenue, N.W. <br> Washington, DC 20530-0001 | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 1:14-cv-01626 (LMB) (TRJ) <br> ) <br> ) **Jury Demanded** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

[1] Due to the sensitive nature of the Plaintiff's job duties, this Complaint is being filed under a pseudonym of Jacob Abilt and general domicile.

| | |
|---|---|
| <u>Serve</u>: Neal McBride, United States Attorney for the Eastern District of Virginia, or c/o Designated Representative United States Attorney's Office 2100 Jamieson Avenue Alexandria, VA 22314<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Jacob E. Abilt, by and through undersigned counsel, and files suit against the named Defendants, and for cause of action states as follows:

1. Plaintiff Jacob E. Abilt ("Plaintiff" or "Mr. Abilt") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, Section 501 the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.* ("Rehabilitation Act"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; for relief from discrimination based on disability (narcolepsy), race (African American), hostile work environment, and retaliation (prior protected activity).

2. Defendant United States Central Intelligence Agency ("CIA") and Defendant Director John O. Brennan ("the Director") (collectively, "Defendants") discriminated against Plaintiff on the basis of his disability (narcolepsy) and race (African American), engagement in prior protected activity, and subjected him to a hostile work environment during the course of his employment with the CIA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title VII, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(1) and (3). Further, this Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. §§ 1331 and 1337.

4. Venue properly lies within this Court pursuant to 28 U.S.C. § 1391, 29 U.S.C. § 1402 and 42 U.S.C. § 2000e-5(f)(3). Director Brennan is an officer of the CIA, and performs a significant amount of his official duties in the District of Columbia and resides, for the purposes of venue, within the District of Columbia. *See, e.g., Bartman v. Cheney*, 827 F.Supp. 1 (D.D.C. 1993) (holding that the Secretary of Defense resides in the District of Columbia for the purposes of 28 U.S.C. § 1391).

5. A substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the Central Intelligence Agency.

## PARTIES

6. Plaintiff is a resident of Maryland and a United States citizen. At all relevant times, Plaintiff was an employee of the United States Central Intelligence Agency ("CIA").

7. Defendant CIA is an executive agency of the United States government and operates in Washington, D.C.

8. Director Brennan is being sued in his official capacity as the Director of the CIA. Director Brennan's office is located in the District of Columbia.

9. Defendants are subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendants; in addition, Defendants are the employer of persons who have committed negligent, discriminatory acts and/or omissions against Plaintiff within the course and scope of their employment. Therefore, Defendants are liable pursuant to the doctrine of *respondeat superior*.

## EXHAUSTION OF REMEDIES

10. Plaintiff has exhausted all of his administrative remedies.

11. On October 17, 2011, Plaintiff timely filed an appeal from the Agency's final decision concerning his equal opportunity complaint (EEO) alleging discrimination in violation of Section 501 of the Rehabilitation Act of 1973 decision with the Equal Employment Opportunity Commission ("EEOC") [Appeal No. 0120120263].

12. Upon receipt of the EEOC's Decision, Plaintiff sought reconsideration [Request No. 0520140331]. The EEOC issued its Denial on August 2014, which provided Plaintiff with 90-days from receipt of the Denial to file his lawsuit.

13. Plaintiff hereby timely files this action within 90-days after receipt of the EEOC's Denial.

## FACTS

14. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

15. In June 2006, Plaintiff commenced his employment as an Applications Developer with the CIA.

16. At or around the time Plaintiff was hired, he informed his supervisors of his disability (narcolepsy), which had been medically diagnosed.

17. Plaintiff successfully performed in the Applications Developer position and was elevated to the position of Technical Operations Officer in or around May 2008.

18. In early 2009, Plaintiff began experiencing symptoms of his disability in the workplace. Defendants' response led to Plaintiff filing an EEO claim May 22, 2009 based on his disability and Reprisal.

19. The parties agreed that as an accommodation of Plaintiff's disability he could take brief naps at his desk, provided that he make-up up the time either by foregoing a lunch break and/or working beyond his scheduled tour of duty.

20. On March 9, 2009, the Defendant delayed Plaintiff's temporary duty assignment (TDY) to a war zone for 30 days.

21. On March 13, 2009 the Defendant canceled Plaintiff's TDY to a war zone for six months.

22. On April 7, 2009 Defendant issued Plaintiff a letter of warning in which it informed Plaintiff that he could not go on a TDY anywhere for six months or TDY to a war zone for 12 months.

23. Beginning in March 9, 2009 Defendant repeatedly required Plaintiff to complete trials to travel overseas that it did not impose upon plaintiffs similarly situated co-workers who did not have a disability, and who had not engaged in prior EEO activity.

24. In an email dated February 18, 2010 Defendant outlined the newly established prerequisites for TDYing overseas but approved and made preparations for pending overseas TDYs for Plaintiffs similarly situated coworkers who did not have a disability and who had not engaged in prior EEO activity.

25. Between March 17, 2009 and April 22, 2010 Plaintiff's supervisor did not give him the assignments and training opportunities that his similarly situated coworkers received who did not have a disability and who had not engaged in prior EEO activity.

26. On about July 31, 2010 Defendant issued Plaintiff an annual performance evaluation containing in accurate and negative information.

27. On about August 5, 2010 Defendant failed to select Plaintiff for a permanent overseas position.

28. Plaintiff had been cleared by Defendant's Medical Officer for the initial TDY assignment overseas to a war zone that was delayed, and he was cleared again after a second inquiry by Defendant as to his suitability for a TDY assignment overseas to a war zone given his disability.

29. Each time Plaintiff was cleared for the TDY assignment overseas to a war zone, the doctor had been provided with Plaintiff's expected function during the TDY assignment. Moreover, Plaintiff's then supervisor has approved his TDY to a war zone.

30. Despite being cleared by Defendant's Medical Officer for the TDY assignment overseas, and Plaintiff's supervisor's approval, Defendant refused to permit Plaintiff to TDY overseas to the war zone.

31. Plaintiff's similarly situated co-workers were allowed to travel TDY overseas, and although new prerequisites were put in place for travel for all employees, Plaintiff's co-workers were not required to meet these new prerequisites, only Plaintiff was required to do so.

32. Plaintiff had satisfied all of the prerequisites his requested TDY assignments. However, some of Plaintiff's co-workers were allowed to TDY after the new perquisites were in place, but without satisfying the new prerequisites.

33. The medication Plaintiff was taking for his narcolepsy was ordered and would have arrived before any TDY overseas to a warzone.

34. Each time Plaintiff met the new standards set for him by Defendant to TDY to a war zone, Defendant would change the standards for him.

35. On or around May 10, 2011, Plaintiff's supervisors recommended that he submit to a Fitness for Duty Evaluation ("FFD") to be conducted by the Office of Medical Services, which ultimately determined that Plaintiff was fit to perform his duties with the agreed accommodations.

36. Ultimately, Plaintiff was terminated on October 31, 2011, without ever being permitted to TDY to a war zone.

37. Employees who are permitted to TDY to a war zone earn income above their standard salary.

38. Upon information and belief, similarly situated employees of a different protected class and/or employees who have not filed EEO complaints were not subjected to the same standards, restrictions, and retaliation as Plaintiff was subjected to during the course of his employment.

### CAUSES OF ACTION

**COUNT ONE**
**Rehabilitation Act of 1973, as amended,**
**29 U.S.C. § 794, *et seq*.**
**(Disability Discrimination and Failure to Accommodate)**

39. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

40. At all relevant times, the Defendants are recipients of federal funding within the meaning of the Rehabilitation Act.

41. Plaintiff suffers from narcolepsy, and as such is a qualified individual with a disability.

42. Plaintiff's medical condition substantially limits major life activities; namely, his ability to care for himself, ability to concentrate, ability to think, ability to drive and ability to sleep.

43. Plaintiff's condition is permanent.

44. At the time of his aforementioned adverse employment actions and to the present, Plaintiff had the necessary knowledge, skills and experience to successfully perform the duties and responsibilities of his position.

45. The Defendants' acts delaying Plaintiff's temporary duty assignment (TDY) to a war zone for 30 days, canceling Plaintiff's TDY to a war zone for six months, issuing Plaintiff a letter of warning and forbidding him from going on a TDY anywhere for six months or TDY to a war zone for 12 months, and requiring Plaintiff to complete trials to travel overseas not impose upon plaintiffs co-workers, issuing newly established prerequisites for TDYing overseas but only requiring Plaintiff to satisfy the same, failing to give Plaintiff's the assignments and training opportunities that his similarly situated coworkers, issuing Plaintiff an annual performance evaluation containing in accurate and negative information, and failing to select Plaintiff for a permanent overseas position are materially adverse actions. Any reason proffered by the Defendants would not be legitimate, and it would be pretext.

46. Prior to the adverse actions complained of herein, Defendants were aware that Plaintiff suffered from narcolepsy.

47. Further, because Plaintiff suffers from narcolepsy, he is entitled to a reasonable accommodation under the Rehabilitation Act.

48. The medical documentation provided by Plaintiff to Defendants established that his medical condition is disabling and significantly affected a major life activity.

49. Plaintiff made repeated requests to Defendants for a reasonable accommodation prior to and after his EEO and EEOC complaint filings.

50. Plaintiff repeatedly informed his supervisors of his disability and that he needed the previously agreed upon reasonable accommodation (i.e., brief naps that he would make up).

51. Defendants counted Plaintiff's disability against him, and took the action complained about herein against him because of his disability.

52. The reasonable accommodation requested by Plaintiff would not have caused an undue burden or hardship on Defendants. Moreover, Plaintiff was able to perform the essential functions of his position with or with the reasonable accommodations requested.

53. Defendants' decision to take the complained of actions herein because of his disability deprived him of the opportunity to be as productive as his co-workers in the same work environment, and deprived him of the opportunity to enhance his career and income.

54. Plaintiff has been treated differently and subjected to different terms and conditions of employment due to his disability.

55. Defendants intentionally discriminated against Plaintiff because of his disability.

56. Defendants have limited, segregated and classified Plaintiff in a way

9

which deprives him of employment opportunities because of his disability.

57. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different terms and conditions of employment.

58. Plaintiff believes that he subjected to the things complained of herein because of his disability.

59. Due to Defendants' actions, Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering and such impact is on-going and permanent in nature.

60. Plaintiff has incurred lost wages and loss of career opportunity now and into the future, all without any negligence being attributed to Plaintiff.

61. As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

62. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendants' treatment and actions were ongoing.

63. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

a. Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

b. Award lost wages and benefits, with interest;

c. Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendants to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.
### (Employment Discrimination on the Basis of Retaliation)

64. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

65. In addition to repeatedly contacting the EEO office, Plaintiff regularly complained to his supervisors and throughout his chain of command regarding the discriminatory and retaliatory treatment that he was experiencing.

66. Soon after complaining, Plaintiff was subjected to intimidation by a new supervisor when he took the naps provided as an accommodation. His TDY assignment

to a war zone was unreasonably delayed, he was given new and additional standards that he had to meet before going TDY to a war zone, and he was subjected to other different terms and conditions of employment as well as other adverse actions alleged throughout this Complaint.

67. Defendants subjected Plaintiff to the aforementioned adverse employment actions because of his engagement in protected EEO activity in violation of Title VII.

68. Defendants, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to engaging in the aforementioned adverse actions when they were informed by Plaintiff, by an EEO representative, or otherwise engaged in the complaint process.

69. The retaliatory actions to which Plaintiff has been subjected are a direct result of Plaintiff having previously engaged in protected EEO activity.

70. Similarly situated employees (no known prior EEO activity) were not subjected to the same or similar conditions complained of herein, or any of the adverse treatment complained of herein.

71. The retaliatory treatment that Plaintiff was being subjected to by Defendants was obvious to his co-workers who could and did observe the distress that it caused Plaintiff.

72. Defendants' unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

73.     Any reasons proffered by Defendants for their unlawful conduct would be pretextual and Defendants cannot further offer any legitimate reason for their unlawful conduct.

74.     Defendants' unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

75.     Defendants' retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of Plaintiffs' rights of because of his engagement in protected EEO activity.

76.     As a direct and proximate cause of Defendants' conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

77.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendants' treatment and actions were ongoing.

78.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court;

    a. Award compensatory damages of Three Hundred Thousand Dollars ($300,000.00);

    b. Award lost wages and benefits, with interest;

    c. Award medical costs and expenses incurred as a result of Defendants' unlawful conduct;

    d. Award reasonable attorney fees, costs, and expenses incurred for this action;

    e. Order Defendants to institute a policy and procedure to be implemented against discrimination;

    f. Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

    g. Supervisory training for the supervisors at issue herein;

    h. Award equitable, declaratory, and injunctive relief; and

    i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT FIVE
### (Equitable Relief)

79. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

80. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendants and could result in further illegal actions on the part of Defendants, by and through their respective agents, servants and employees.

    WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

    a. Order Defendants to institute a policy and procedure to be implemented against discrimination;

    b. Equal Employment Opportunity training for Defendants and the supervisory officials at issue herein;

    c.    Supervisory training for the supervisors at issue herein; and

    d.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

81. Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

By:   //s// *Frazer Walton, Jr.*_____
FRAZER WALTON, JR.
   (V.A. Bar No.: 30959)
LAW OFFICES OF FRAZER WALTON, JR.
1913 D Street, N.E.
Washington, DC 20002
Office: (202) 398-8920
Email: frawalton@verizon.net

December 4, 2014                  Counsel for Plaintiff